May it please the Court, my name is Jeremy Yellen. It is my honor to represent Randall Old Person here in front of you today. I would like, if I may, reserve two minutes for rebuttal. In our papers, we set forth four reasons why Mr. Old Person should be entitled to get and he was unintelligent. The basis for that is clear on the record insofar as the court-appointed expert, Dr. Cynthia Lowe, indicated that Mr. Old Person had significantly decreased intellectual functioning. He had a 57 IQ or has a 57 IQ. He basically couldn't even spell the word world, couldn't subtract 3 from 100, was at a 3rd grade spelling level, a 4th grade reading level, and a 6th grade math level. This was because Mr. Old Person suffered a subdermal hematoma. He was at a 6th grade mathematical level, if you can believe that. 4th grade reading and 3rd grade spelling. He suffered a subdermal hematoma and received a craniotomy in 99 and then in 2000, he was essentially dead and he had to be resuscitated. That's the basis for his intellectual problems. Now, of course, Dr. Lowe met with and spoke to Mr. Old Person. And essentially, after she reviewed the extensive documents, and I dare say the entire appendix papers that the court has, Dr. Lowe had, if not more papers. Our standard of review is for clear error and all the evidence that you've described for us and a lot more was in front of the district judge. Is there clear error and if so, specifically, as to what findings? Yes, thank you. Dr. Lowe said there is clear error because Dr. Lowe said that Mr. Old Person didn't understand his trial rights, did not understand that he'd be waiving his right to appeal, did not understand the nature of the plea agreement, which was a non-binding plea agreement. And Dr. Lowe testified, that's what Dr. Lowe stated in her report and her testimony bears it out. But further, Dr. Lowe testified that essentially the only thing that Mr. Old Person understood was what he was charged with. So it's clear that there was overwhelming evidence that Mr. Old Person did not understand the rights he was giving up when he pled guilty. And of course, he did not understand the circumstances and the consequences of that. With regard to our, the second basis for, well, he was found mentally competent to stand trial. Well, that's quite interesting because if the court will. Was he? Yes. And you haven't challenged that finding on appeal? Well, the reason I haven't challenged that finding on appeal is because as the record reveals, Dr. Lowe said that Mr. Old Person had, he had less than adequate ability to assist his attorney and he had less than average ability to understand. But she said that with time and with extensive meetings with Mr. Old Person, he could be made to understand the proceedings and to appear at trial. Well, counsel, there's a kind of a theoretical problem with your not appealing that, and that is that the Supreme Court has said that the standard for competence to stand trial and competence to plead guilty, the standards are identical. So if there's an unchallenged finding that he was competent to stand trial, aren't we bound by that? Well, I don't think so because, again, the record shows that he could be made competent if Dr. Lowe testified and Judge Haddon stated on the record at that July 1st competency hearing on fitness to proceed. He said it will take extensive work to make Mr. Old Person ready for trial. Now, that's different than when Mr. Old Person entered his plea. There was no evidence that there was extensive work to get Mr. Old Person prepared for that change of plea. But that's different. That has to do with whether counsel was competent or counsel was effective because if, with preparation, he was competent to plead guilty, then the only question is not his competency but the efficacy of his lawyer. Well, essentially, this Court in, if I'm pronouncing the name right, Longoria, stated and was aware that during the rush to get a person prepared for the change of plea hearing, there's a rush. There's boilerplate language and there's a rush to it. The Court, the Ninth Circuit conceded that fact. And so it said we've got to focus on what happened at the change of plea hearing. And essentially, as the Court is well aware, at the change of plea hearing, there was not one question asked of Mr. Old Person. Do you have any injuries? There was questions about do you suffer from any mental disease or defect. But do you have any injuries that we're not aware of? Do we have any head injuries that we're not aware of? The questioning on his competency at the change of plea hearing with all respect to Judge Haddon was minimal. There was extensive colloquy there, most of which went to the punishment phase and minimally to his biographical information as well as what was going on upstairs. So I think that I understand the Court's concern, but it seems to me that when a doctor says you can make a fellow competent to stand trial if you assist him and spend time with him, but he didn't understand what was happening at the change of plea because of the number of questions that were being asked and then being told, excuse me, the number, amount of information being provided to Mr. Old Person. In one question or one statement Judge Haddon gave, it was about a page and a paragraph long. Fifteen items of information were provided. And then do you understand? And Mr. Old Person said 43 times, yes, Your Honor, and that was it by my count. If I can move on to the second issue, and they're all kind of related as the Court probably can tell, is the fact that Rule 11 wasn't strictly complied with, which is mandatory. The basis why we say it wasn't complied with is because Judge Haddon said to Mr. Old Person, if I'm going to accept this plea, you're going to have to tell me in your own words what you did. And then, of course, Mr. Old Person said that he touched the complainant over the clothes, which does not comply with the definition. At the same time, he also said that he had read the offer of proof and that he agreed with it. And in the offer of proof, it was clearly stated that the victim was naked and in the bath, and that's when he touched her. So why isn't that a sufficient statement of the basis? Because Rule 11 says that the Court must inform the defendant of and determine that the defendant understands the following. When you say one thing and then agree to something else, the Court is required to make sure that he understands the nature of each charge. So when Mr. Old Person, who is intellectually deficient – That's – you're sliding away from the question. Your statement was he only admitted to touching her while she was dressed, but he also admitted by saying that he had read and agreed with the offer of proof, he also admitted that he had touched her when she was not dressed. Why isn't that permissible? Because they conflict. The two statements conflict. He says, I touched her over the clothes, and then the offer of proof says that he touched her skin to skin. And it appears that when the judge is required to make sure that the person understands the nature of the charge, when he says one thing and the Court recognizes, you have to tell me in your own words what you did, and he doesn't do that, that it's not strict compliance with Rule 11. I'm looking at the transcript, and I see the place where he says he touched her over the clothing on page 22 of that, and then on page 23, I see the place where he's asked if he's read the offer of proof, and is there anything you disagree with, and he says no. So beyond that, then, the lawyer is asked, Mr. Gallagher, are you satisfied the government would be able, I guess, to present proof consistent with the offer of proof? And the lawyer says yes. Is the lawyer's answer, does it have any bearing on the colloquial adequacy or not? In my view, it doesn't, because Judge Haddon said, you have to tell me in your own words what you did, and when you have that conflict from the accused's own words, the Court is mandated under Rule 11 to make sure that the accused understands the nature of the charge. There was no definition of a sexual act. The Court didn't say, these are the elements of the offense. Nobody said these are the elements and what sexual act means is, and that's the problem as it goes, connected to my client's IQ of 57, his poor reading, his poor skills in a myriad of ways. And that's also the reason why my point three, I have a few seconds. I guess I'm out of time. Go ahead. I've got some questions. Okay. Go ahead. Okay. Thank you. The third basis is a fair and just reason to allow Mr. Oldperson to withdraw his guilty plea. And basically, we have his intellectual functioning, which in our view makes his plea unintelligent. We have the failure in the plea colloquy, which makes it involuntary. We have Mr. Oldperson first telling the FBI I didn't do it. Then he meets the FBI again and says, first, I did do it. He's polygraphed. Excuse me. He first meets with the FBI. He says he didn't do it. He meets with them again. He says, I didn't do it. Then when he's polygraphed, he admits, allegedly admits. He goes to court at a suppression hearing, denies the allegation. Then a few weeks later, gets on the stand again or is sworn in, says he did it. And then when he seeks to terminate his prior counsel, he again tells Judge Haddon, I didn't do this. And Judge Haddon says, well, we're past that point. And then finally, there's no physical evidence to support the allegation. So we feel that even if the court finds that Rule 11 is complied with, although narrowly, if the court feels that he intelligently and voluntarily made his plea, although narrowly, is a fair and just reason, all Mr. Oldperson is asking is to go to trial. Yeah. That's what he wants, huh? Yes. Well, the Supreme Court has told us that competency to stand trial is equivalent to mental competency to enter a guilty plea. Right? Yes. Okay. Well, I don't know how to put this, but I think they're completely off base. Because mental competency to go to trial means you just have to know what's going on. You may be able to talk to your lawyer. But mental competency to waive your constitutional rights, your right to a jury trial, all the rest of them has to be done knowingly, intelligently, and voluntarily. But that's what they've said. And I've got a case that I decided 12 years earlier, which they may not have read, which states that the two are different, that that's no longer, quote, good law, unquote. And, you know, this is a tough case that you have. And I don't have time, but I think you're a good advocate.  All right. We'll hear from the government. Thank you. My name is Joe Thagard. I'm an assistant United States attorney for the District of Montana, and I represent the government in this matter. As an initial point, I would, again, emphasize what came up during the course of the questioning, which is that competency to understand the proceedings and to assist counsel at trial is the same sort of standard that is invoked in determining whether or not a defendant was competent to enter a guilty plea. And in this instance, not only Dr. Lowe, but Dr. Zook, who was retained by the defense in this matter, concluded that although the defendant did have some substantial issues of dementia, which we do not contest, that he was nevertheless competent. And that is, I think, of critical importance here. He's competent to go to trial, right? Yes. Yes. Because he can talk to his lawyer and he knows what's going on generally. Exactly. And he can assist his lawyer. And in addition to that, there were other findings that Dr. Lowe made, which may tend to go beyond what we may qualify there as a relatively minimal standard of competence. She did find that the defendant understood the charge that he faced. She did find that he understood his right to present witnesses, although he was apparently somewhat uncertain about his subpoena power. She found that he understood his right to confront the witnesses. And she found that while he did not understand the term privilege against self-incrimination, that he did understand that he was not required to testify. These are among the critical rights that he's waiving by his plea of guilty. And by Dr. Lowe's testimony, the defendant understood these rights. In addition, I'd point out that Dr. Lowe concentrated. The other rights are not critical? No, they're also critical, Your Honor, and I don't dispute that. But I do think it's important that these sort of core rights, which I think it's certainly critical in any instance that a defendant understand he or she is waiving by a plea of guilty, that he did understand these. And I think that when we view those in addition to the findings of both Dr. Zook and Dr. Lowe, that he was competent, that that certainly establishes the defendant's competence. But it doesn't take much to be competent to go to trial. Well, I guess it doesn't take much. It does. No, it doesn't. What do you have to show to be competent to go to trial? Well, in order to be competent to go to trial, you have to understand the proceedings and you have to be able to assist your attorney. And those are two fairly significant hurdles. I know, but you have to know that there's a criminal charge that's been brought against you and you have to be able to talk to your lawyer. That's about it, isn't it? That's correct. It doesn't say you have to understand the proceedings. Did he understand what an offer of proof is? Well, I think in this instance he did. And, again, I think what we need to look to here is Dr. Lowe concentrated in large part on his understanding of the plea agreement. And while I think that that is significant, I think it's also significant to actually look at the plea colloquy. As Judge Haddon stated in finding that the defendant was competent to enter a guilty plea, he was in a position to view this man's demeanor. Let me ask you this. When the judge first came out, when the judge questioned him that the touching occurred over the clothing and then there was something in the offer of proof that it occurred while the child was naked in the bathtub, there's a conflict there, isn't there? There is, Your Honor. It's a pretty important difference, right, between sexual conduct and sexual acts? It is. Yes, it's a significant conflict. Let me ask you this. Let me ask you this. Don't you think that at that time that the judge should have cleared that up and said, well, you've said one thing here and another thing there. Now, which is it? It certainly wouldn't have been helpful. Or would have that been your duty to get up and say, well, Your Honor, Your Honor, there's a problem here? If it's one, then it's a serious offense. If it's the other, it's an included offense. I mean, that was part of your job, wasn't it? Wasn't that part of your job? Huh? I agree with that, Your Honor. I agree it is part of my job. So you let the judge down, didn't you? Well, I did, and if I can finish my answer of what I will tell this to the court. I've been in similar positions before courts in the past and have brought these things to the court's attention. In this instance, I frankly did not hear him say that it was under the clothing, and I certainly would have called it to the court's attention. I'm not in a position to tell you what Judge Haddon may or may not have heard. I didn't hear it. Had I heard it, I would have brought it to the court's attention. And I would have brought it to the court's attention at the point when the court asked me if I had anything to add to the offer of proof. I would have said this is clearly what the government alleges, that this child was entirely naked, was bathing, and that it occurred on a number of occasions. I want you to know I appreciate your candor. Thank you, Your Honor. What is the significance, if any, of the lawyer's statement, Mr. Gallagher's statement, that he thinks the government could present proof consistent with the offer of proof? Does it all turn on what Mr. Holperson said, which has this conflict, or can we consider what Mr. Gallagher said? You're able to consider what Mr. Gallagher said, Your Honor. You're able to consider the totality of the circumstances.  You're able to consider the defendant's statement to the court. And you're able to consider Mr. Gallagher's statement to the court. Again, you're not limited simply to what the defendant has had to say about this. There's a broad basis here, and you can certainly consider what Mr. Gallagher had to say. And regarding Mr. Gallagher, I think it's significant that while Dr. Lowe had an opportunity to meet with the defendant and discuss his understanding of the plea agreement, she was not able to speak with Mr. Gallagher. She attempted to, and he wouldn't talk with her about the scope of his representation. And so we are in a circumstance where the judge was able, Judge Haddon was able to view the defendant and view Mr. Gallagher, interact with one another, and to determine just how competent this defendant was and how well he was being treated in the hands of Mr. Gallagher. And there's absolutely nothing in the record, including an allegation by the defendant, that Mr. Gallagher was in any way deficient, that he was in any way ineffective. There's been no ineffective assistance of counsel claim raised here. Well, excuse me, Gallagher is the head of the Federal Defender's Office in Montana, right? Yes, that's correct, Your Honor. That's the same Gallagher, right? Yes, Your Honor. He's been before this court on numerous occasions. Now, let me ask you this. Was the offer of proof read to the defendant? I don't know if it was read to him or not. What the defendant said in the course of questioning by the court was that he had read it. I am not in a position to say whether or not Mr. Gallagher had actually read it to him. No, no, no. What I mean is that did the court have someone in open court? Usually it's the assistant U.S. attorney read the offer of proof out loud. No, Your Honor. And then the judge will turn to the defendant and say, and ask the defendant, is what counsel for the government said true? And is that what happened? The defendant will say, yes, yes. That wasn't done. And that was not the procedure employed here, Your Honor. The procedure here was that Judge Hadden always employs is he has the assistant U.S. attorney recite what the elements are of the crime. He asks if the defendant in his counsel dispute those, and then he asks if the defendant has reviewed the offer of proof, and if there's anything in it that he disagrees with. He does not, however, require the AUSA to read the offer of proof in open court, and he does not do so himself. All right. Thank you. And I see that my time has expired. I'll simply be silent now unless there are any questions for me. If you have something that you haven't covered, go ahead to hear it. Your Honor, I think that the questions asked of me have adequately covered what I have to say. Thank you. All right. Thank you. All right. Thanks. All right. Do you have any rebuttal? Briefly, if I might, Your Honor. Thank you. I just wanted to reiterate that Dr. Lowe not only focused on the actual plea agreement document, but she also commented directly on the procedure during the plea colloquy and the complicated information that was provided to Mr. Oldperson and how that correlated to the difficulty that a person with his intellectual functioning would have in understanding it. The next item would be that I didn't know, with regard to the comments regarding Mr. Gallagher, the government seems to say that the court got to see how Mr. Oldperson responded to Mr. Gallagher and vice versa. But obviously, with all respect to Mr. Gallagher, who is a mentor of mine, Mr. Oldperson, before even sentencing, asked that Mr. Gallagher be relieved. Yes, but that doesn't mean anything. I understand. Just because a judge sees two people standing together doesn't mean that everything is hunky-dory. That's my only point there. And then finally, we're just looking at the record and the words. I have one more question for you about the adequacy of the factual basis for the plea. The court also had your client's handwritten statement in front of him, correct? The one that the FBI agent? Yes, where he describes what he did. Essentially, if the court will recall, that at the suppression hearing, Mr. Oldperson testified that That was a yes or no question. By the time of the change of plea hearing, was that part of the factual basis that the court had at that time? I'm not sure because, if I can explain why I'm not sure, because at the suppression hearing, Mr. Oldperson testified that I wrote what the FBI agent told me to write, and that's what the FBI agent testified to at that suppression hearing, which is part of the record. So I don't know if the court recalled that. It obviously heard it several months or some time before, a few weeks before, but I don't know if the court recalled the fact that Mr. Oldperson signed a statement and the facts surrounding that. And was the suppression motion successful or unsuccessful? It was not successful. So as far as we're concerned, that statement is admissible because it's not been challenged in this appeal. Well, essentially, I would submit that it's part of the record that can be considered. We were wanting to get a new trial, a trial, because when he pled guilty, he waived his rights to appeal anything before. So we just want a trial. And that's kind of why it didn't occur to me that perhaps that's an issue because I thought it would be viewed that he waived that. If the waiver was valid, so would the plea where he waived his right to appeal the court's findings. I understand your position. I just refreshed my memory. Did the judge refer to that handwritten statement at the time the guilty plea was taken? I didn't see any reference to that, and I reviewed that about four times prior to standing in front of Your Honors. It wasn't read to him as far as we know at that time? No. Anything else? No. Okay. Thank you very much. I also appreciated the arguments of both the. They were very helpful. Thank you. Very helpful on both sides. Thank you. Just to keep the record clear. First two matters, U.S. versus Buckles and U.S. versus Geron Mark Hansen are submitted. And.
judges: Pregerson, Graber, Gould